No. 85-124

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

DEE SHEPARD,

   Claimant and Appellant,

 -vs-

MIDLAND FOODS, INC., Employer,

  and

GLACIER GENERAL ASSURANCE COMPANY,

   Defendant and Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable
       Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Kelly & Halverson, P.C.; Sheehy, Prindle & Finn;
    Patrick L. Prindle, Billings, Montana

  For Respondent:

    Crowley Law Firm; L. Randall Bishop, Billings,
    Montana

---

       Submitted on Briefs: Aug. 22, 1985

          Decided: December 18, 1985

Filed: DEC 18 1985

*Ethel M. Harrison*

---
        Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Dee Shepard appeals a Workers' Compensation Court order awarding him disability benefits. The issues on appeal are whether the lower court erred by (1) refusing to increase Shepard's award under § 39-71-2907, MCA, for unreasonable delay or refusal to pay; (2) holding defendant insurer not liable for medical expenses paid by other health care providers who have not sought reimbursement from Shepard. We affirm.

The parties have been before this Court in a related proceeding; Shepard v. Midland Foods, Inc. (Mont. 1983), 666 P.2d 758, 40 St.Rep. 1177. We set out the case history in some detail in the first Shepard case. The resolution of the instant case requires only a perfunctory outline of the facts.

In 1972, a doctor diagnosed Shepard as suffering from degenerative arthritis and chondrocalcinosis in his knees. In February 1980, Shepard injured his knee while working at his job for Midland Foods, Inc. He received temporary total disability payments for ten days after the injury. Shepard returned to his job in February 1980 but retired in April of that year due to knee difficulties and on the advice of his doctor. He sought permanent total disability benefits after his retirement and was denied the same. Shepard petitioned the Workers' Compensation Court for a hearing on his right to disability benefits. In September 1982, the Workers' Compensation Court denied permanent total disability benefits to Shepard.

The court concluded that Shepard had retired because of his knees, which had deteriorated for other than work related reasons. The court ruled that Shepard's injury at work was not the cause of his disability.

2

Shepard appealed that decision and in July 1983, this Court reversed the Workers' Compensation Court, holding that there was not substantial evidence that Shepard's knees had deteriorated for other than work related reasons. This Court remanded the case for a determination of the compensation, costs, fees and penalties, if any, to which Shepard was entitled.

In October 1983, the Workers' Compensation Court again held a hearing on Shepard's claim for disability benefits. At that hearing, Shepard's counsel stated that Shepard's total medical expenses to that time amounted to $23,160.42. Counsel stated that, of that amount, Medicare had paid $19,273.85, Banker's Mutual, Shepard's insurance carrier, had paid $1,156.96, and Shepard had paid $407.60.

During the course of the proceedings, counsel for the insurer delivered a check for $11,870.60 to Shepard's counsel. The insurer's counsel stated in court that Shepard's cashing of that check was not meant to be a release or compromise of any of Shepard's claims or rights. On October 11, 1983, insurer's counsel filed an affidavit with the Workers' Compensation Court. The affidavit stated, (1) that the check delivered to Shepard's counsel stated on the back that the endorsement of the check would be a release and receipt in full payment; (2) that the affiant did not know this language was on the check at the time the check was offered; (3) that the affiant only learned of this language after the October 6, 1983 hearing; (4) that the affiant then delivered another check to Shepard, which check had the endorsement and release language crossed out and initialed; and (5) that it was not the intent of the insurer's counsel that the cashing of the check would be a release of Shepard's claims. The record also contains a letter from insurer's counsel to Shepard's counsel which supports the veracity of the affidavit.

3

At the October 6, 1983 hearing, the Workers' Compensation Court granted counsel approximately sixty days (until November 30, 1983) to complete the two anticipated depositions for the case. The depositions were to be submitted as part of the record upon which the Workers' Compensation Court would make its decision. Counsel for both parties requested and received an extension for the filing of depositions until January 30, 1984.

The insurer completed its deposition by that deadline. Shepard requested and received two further extensions for the completion of depositions. Shepard finally filed his completed deposition with the lower court on April 30, 1984. Thereafter, counsel for both parties submitted proposed findings of fact and conclusions of law in August 1984.

On December 24, 1984, the Workers' Compensation Court issued its decision. The court awarded to Shepard total disability benefits from February 1980, medical benefits for treatment and surgery on his knees, and reasonable costs and attorney's fees. The court held that Shepard was not entitled to be paid for benefits paid by other health care insurers. The court refused to impose a twenty percent penalty on the insurer under § 39-71-2907, MCA.

In January 1985, Shepard's counsel filed a petition for rehearing and request for order nunc pro tunc. The petition again requested the lower court to impose a twenty percent penalty on the insurer. The petition also requested the lower court to order the defendant insurer to reimburse Medicare and Shepard's health care insurer for the amounts they had paid for Shepard's medical expenses. The petition states:

> . . . Claimant is primarily liable to Medicare and his health insurance company for benefits paid through those policies which are the Workers' Compensation insurer's responsibility. Upon discovery of nonreimbursement, Medicare and the

4

health insurance provider will sue the Claimant, not the insurer.

The lower court issued an order refusing Shepard's requests and stating:

> If, at a future date, claimant is sued for medical costs which should have been paid by defendant, claimant may file a Petition asking for a ruling on the matter. . . If the claimant is held responsible, it is clearly the insurer's obligation to pay medical benefits; thus, litigation of that issue seems unlikely.

Shepard appeals the rulings of the District Court.

The first issue is whether the lower court erred in refusing to increase the award to Shepard under § 39-71-2907, MCA. That section allows a court to increase the compensation benefits due a claimant by twenty percent where the insurer has unreasonably delayed or refused payment of compensation. A decision to increase the award under this section is within the discretionary power of the Workers' Compensation Court. Putnam v. Castle Mountain Corp. (Mont. 1985), 702 P.2d 333, 42 St.Rep. 833. This Court will not overturn a decision of the Workers' Compensation Court where there is substantial evidence to support the findings and conclusions of the lower court. Nielsen v. Beaver Pond, Inc. (Mont. 1983), 661 P.2d 47, 40 St.Rep. 489.

The first issue arises from appellant's contention that the lower court erred in refusing to impose a twenty percent penalty upon the insurer for unreasonable delay or refusal to pay. Appellant argues that until January 1985, the respondent insurance company refused payment of benefits. Appellant later concedes that respondent offered a check for $11,870.60 on October 6, 1983 but contends that cashing the check would have prejudiced his rights. He ignores the record and the affidavit of respondent's counsel which show that the check was not offered as a final settlement of the claim and that respondent did not intend the cashing of the check to be a release of appellant's claims or rights.

5

The record also shows that much of the delay in this case was due to appellant's repeated requests for extensions of time in which to complete depositions. The record further shows that, generally, respondent was reasonable in the negotiations and conduct of the case. Respondent did initially deny its liability to Shepard for permanent total disability benefits but this action was not in itself unreasonable. In fact, the lower court at first agreed that respondent was not liable for permanent total disability benefits. We uphold the lower court's decision to not impose a twenty percent penalty upon respondent.

The second issue is whether the lower court erred in holding respondent not liable for medical expenses paid for by other health care providers who have not sought reimbursement from appellant.

Appellant's argument on this issue is somewhat confusing. Appellant appears to argue at one point that respondent is liable to appellant for medical expenses paid by other health care providers. Before the lower court, however, appellant requested that respondent be required to reimburse the health care providers. Appellant cites no case law for either proposition.

Neither Medicare nor Banker's Mutual, Shepard's insurance carrier, was a party to this action. The lower court had no jurisdiction to adjudicate any right to reimbursement which those entities had. See Spiker v. John Day Co. (Neb. 1978), 270 N.W.2d 300.

Section 39-71-704, MCA, entitled Payment of medical, hospital, and related services, states that,

> . . . the . . . insurer shall furnish, without limitation. . . reasonable services by a physician or surgeon, reasonable hospital services and medicines when needed, and such other treatment as may be approved. . .

6

Contrary to appellant's assertion, this statute is not authority for ordering respondent to pay appellant for medical expenses already paid by other health care providers. The statute requires the insurer to furnish reasonable services, medicine and treatment. To order the insurer to pay appellant for medical expenses already paid is not furnishing services nor is it reasonable. In Spiker, the Nebraska Supreme Court held that the plaintiff had no valid claim for reimbursement for services furnished by the Veterans Administration and Medicare. The Nebraska statute controlling in Spiker is similar to § 39-71-704, MCA.

Appellant Shepard is here asking for a windfall. The lower court ruled that if Shepard were sued for medical expenses, he could petition the Workers' Compensation Court for relief. That ruling is logical, equitable and can provide Shepard with prompt relief. We hold that the lower court did not err in its ruling on this issue.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy did not participate.

7