No. 04-807

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 329

LORI OBERSON, as conservator of the
Estate of BRIAN MUSSELMAN, an
Incapacitated Person,

        Plaintiff and Respondent,

   v.

FEDERATED MUTUAL INSURANCE COMPANY,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Second Judicial District,
                In and For the County of Silver Bow, Cause No. DV 2001-242,
                Honorable John W. Whelan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Charles G. Adams, Esq., Keller, Reynolds, Drake, Johnson
                & Gillespie, P.C., Helena, Montana

        For Respondent:

                Keith Marr, Esq., J. David Slovak, Esq., Lewis, Slovak & Kovacich,
                Great Falls, Montana

                              Submitted on Briefs:  July 5, 2005

                                  Decided:  December 20, 2005

Filed:

                              Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant, Federated Mutual Insurance Company (Federated) seeks subrogation against Brian Musselman=s (Musselman) estate for workers= compensation benefits it paid pursuant to a workers= compensation claim Musselman made against his Michigan-based employer, International Engineering & Manufacturing, Inc. (International). Respondent, Lori Oberson (Oberson), is Musselman=s sister who serves as the guardian and conservator of Musselman=s estate, as he is incapacitated. Upon her motion, the District Court granted Oberson summary judgment, concluding that Montana law governs this case and prevents subrogation from Musselman=s personal injury tort award until Musselman is made whole.

¶2 Federated appeals the District Court=s grant of summary judgment in Oberson=s favor. We affirm.

## ISSUE

¶3 The restated dispositive issue on appeal is whether Montana law governs a subrogation claim brought by a workers= compensation insurer for reimbursement of benefits paid to a Michigan worker who, injured while working in Montana, recovered a third-party personal injury judgment in a Montana court?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On February 25, 1996, Musselman, a Michigan resident, suffered an incapacitating head injury while working in Montana for his Michigan-based employer, International. Following his injury, Musselman filed a workers= compensation claim in Michigan. Concurrently, Musselman filed a personal injury claim against third-party tortfeasors in

2

Montana pursuant to which the United States District Court for the District of Montana awarded him a $11,296,800.00 judgment. After extensive litigation regarding the legitimacy of Musselman=s workers= compensation claim, the Michigan Court of Appeals affirmed that Musselman was acting in the course and scope of his employment when he was injured. (*See Musselman v. International Engineering & Mfg., Inc.* (Mich. 2002), 651 N.W.2d 912 (Table), denying reconsideration). Federated then paid Musselman workers= compensation benefits.

¶5     Musselman=s injuries are catastrophic and the cost of his life-long care will be exorbitant. In granting Musselman $11,296,800.00 in damages, Montana=s federal court found that Musselman=s injury resulted in cerebral spastic quadriparesis and an inability to swallow or speak. Musselman now resides in an adult care facility. He will be fully dependent on others and will require 24-hour care to attend to his basic needs such as feeding, bathing, grooming, and dressing, for the rest of his life. Unfortunately, Musselman will never recover the full amount of the judgment awarded him by Montana=s federal court, as the court apportioned 10% of the fault for Musselman=s accident to Musselman himself, 40% to the United States Forest Service, and 50% to an insolvent third-party defendant. Also, costs and attorney fees incurred in the litigation of Musselman=s claims further reduced his recovery of the awarded judgment.

¶6     Federated filed a subrogation claim against Musselman=s Montana personal injury award in Michigan=s workers= compensation court. In response, Oberson, on behalf of Musselman, filed this declaratory action in Montana. On March 12, 2004, Oberson filed a

motion for summary judgment in the District Court seeking a declaration that (1) Montana law governs the enforceability of Federated=s subrogation interest, and (2) Montana law bars Federated from recovering on a subrogation claim until Musselman is made whole. Federated filed a cross-motion for summary judgment contending that Montana lacks jurisdiction over this dispute and Michigan law should control.

¶7     The District Court heard oral argument on July 12, 2004, and on September 28, 2004, the District Court granted Oberson=s motion for summary judgment.

## STANDARD OF REVIEW

¶8     We review a district court=s grant of summary judgment de novo, and apply the same criteria applied by the district court pursuant to Rule 56(c), M.R.Civ.P. *Hanson v. Water Ski Mania Estates*, 2005 MT 47, **&** 11, 326 Mont. 154, **&** 11, 108 P.3d 481, **&** 11.  A district court properly grants summary judgment only when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. *Baumgardner v. Pub. Empl. Bd. of State*, 2005 MT 199, **&** 14, 328 Mont. 179, **&** 14, 119 P.3d 77, **&** 14 (citations omitted).

## DISCUSSION

¶9     We are asked by the parties to determine whether Montana=s or Michigan=s substantive law governs Federated=s subrogation interest in Musselman=s third-party tort award.  The underlying facts are not in dispute.  Further, the parties agree that if Michigan law applies, the District Court lacked jurisdiction to grant summary judgment and Michigan=s courts are free to allow subrogation in keeping with Michigan law.  The parties also agree that if Montana law applies, our well-established "made whole" doctrine

4

proscribes subrogation here.

¶10     First, Federated contends that comity demands we defer to Michigan=s workers= compensation court to determine Federated=s subrogation interests in proceedings now pending before that tribunal.  Comity is Anot a rule of law@ but rather Aan expression of one state=s entirely voluntary decision to defer to the policy of another.@  *Simmons v. State* (1983), 206 Mont. 264, 289, 670 P.2d 1372, 1385 (citations omitted).  Federated points us to *Siira v. Employers Mut. Liability Insurance Co.* (Mich. Ct. App. 1979), 274 N.W.2d 26.  In that case a Montana resident, injured in Montana, received benefits under Montana=s Workers= Compensation Act, and subsequently recovered a third-party judgment in Michigan.   The Michigan Court of Appeals determined Montana law governed a subrogation-related dispute between Mr. Siira and his employer=s workers= compensation insurer.  Notably missing from the *Siira* court=s decision, however, is any discussion suggesting a Michigan public policy interest in retaining jurisdiction over the subrogation issue.   In contrast, as illustrated below, Montana=s firm public policy disallowing subrogation prior to full recovery by damaged parties is embodied in Article II, Section 16 of Montana=s Constitution, and has been applied repeatedly by this Court.  Therefore, with all due respect to Michigan=s court, we reject Federated=s comity argument, and decline to voluntarily relinquish jurisdiction over this dispute.

¶11     In the alternative, Federated argues that if Montana does have jurisdiction, the Montana Workers= Compensation Court is the proper forum for resolution.  We reject this contention.  Montana=s Workers= Compensation Court maintains limited jurisdiction over

benefits flowing from Montana=s Workers= Compensation Act. Section 39-71-2905, MCA. Federated concedes Musselman never filed for workers= compensation benefits in Montana. The monetary recovery implicated here flows exclusively from tort damages suffered in Montana, adjudicated in federal civil court, and directed by Montana=s substantive tort law. Therefore, Montana=s Worker Compensation Court has no jurisdiction over this subrogation issue.

¶12    Finally, Federated urges this Court to adopt § 185 of the Restatement (Second) on Conflict of Laws (§185) concerning workers= compensation subrogation. Section 185 provides that the local law of the state in which workers= compensation benefits were paid shall determine what interest the benefit-paying entity has in any recovery for tort. Were we to agree with Federated, Michigan law would be applied to this dispute.

¶13    This Court has not adopted the Restatements of Law whole cloth, opting instead to evaluate the language and provisions of the Restatements in light of Montana=s public policies and the Legislature=s statutory guidance. *Compare Phillips v. General Motors Corp.*, 2000 MT 55, & 23, 298 Mont. 438, & 23, 995 P.2d 1002, & 23 (a conflict of law case where we adopted the Amost significant relationship@ test from the Restatement (Second) on Conflict of Laws to determine the applicable substantive law for issues in tort) to *Sternhagen v. Dow Co.* (1997), 282 Mont. 168, 173-74, 935 P.2d 1139, 1142, (where we acknowledged previous adoption of Restatement (Second) of Torts § 402A but rejected corresponding comments to that section as inconsistent with established Montana law) and *Warnack v. Conen Family Trust* (1996), 278 Mont. 80, 87, 923 P.2d 1087, 1091 (where we

6

declined to adopt §§ 478 and 479 of the Restatement of Property which contradict Montana jurisprudence). Moreover, in choice of law cases, this Court has consistently rejected rigid rules, favoring the modern trend toward a Amore flexible approach which permits analysis of the policies and interests underlying the particular issue before the court.@ *Phillips*, ¶ 22 (citation omitted). Finally, as noted above, the workers= compensation context giving rise to the parties= relationship here is of no legal consequence, as the money Federated seeks flows directly from Musselman=s injury in Montana, to which Montana=s federal court applied Montana tort law to conclude that damages were warranted. In light of these factors, we decline to adopt and apply § 185 here.

¶14     This Court has consistently interpreted the language of Article II, Section 16 as precluding the subrogation of a tort award until the damaged party fully recovers. Article II, Section 16 of the Montana Constitution provides:

> Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen=s Compensation Laws of this state. Right and justice shall be administered without sale, denial, or delay.

Based on this provision and the equities flowing therefrom, Montana has rebuked the insurance industry=s efforts to garnish an accident victim=s third-party recovery. In *Francetich v. State Comp. Mut. Ins. Fund*, we held that Article II, Section 16 expressly prohibits efforts to restrict the right to obtain full legal redress against third-party tortfeasors:

> The record of the debate at the Convention is clear that this was the

7

delegates= intent in amending the provision. The second sentence [of Article II, Section 16] is mandatory, prohibitive, and self-executing and it prohibits depriving an employee of his full legal redress, recoverable under general tort law, against third parties.

*Francetich* (1992), 252 Mont. 215, 224, 827 P.2d 1279, 1285.

¶15 We reaffirmed this Amade whole@ doctrine in *Trankel v. State Dept. of Military Affairs*, expanding its principles to protect against interference by either the federal courts or foreign jurisdictions. *Trankel* (1997), 282 Mont. 348, 938 P.2d 614.

> [A]ny statute or court decision which deprives an employee of his right to full legal redress, as defined by the general tort law of this state against third parties, is absolutely prohibited. The second sentence of [Article II, Section 16] is **mandatory and self-executing, and leaves no room for erosion based on what federal courts or the courts of other states would do pursuant to federal laws or the laws of other states**. [Emphasis added.]

*Trankel*, 282 Mont. at 362, 938 P.2d at 623.

¶16 Musselman cites two illustrative cases in which this Court applied Montana law to prohibit subrogation by out-of-state insurers. In one personal injury case, we rejected subrogation efforts by an Oregon insurer, and found in favor of a Washington resident injured in Montana, stating that subrogation of medical benefits in Montana is void as against public policy. *Youngblood v. American States Ins. Co.* (1993), 262 Mont. 391, 400, 866 P.2d 203, 208. Later, we held that a third-party recovery in Montana could not be subjected to a Colorado insurance policy=s Achoice of law@ provision, as Colorado law would trigger subrogation rights resulting in violation of Montana=s Amade whole@ doctrine. *Swanson v. Hartford Ins. Co. of Midwest*, 2002 MT 81, & 33, 309 Mont. 269, & 33, 46 P.3d 584, & 33.

8

¶17    *Trankel*, *Youngblood*, and *Swanson* are determinative in our choice of law analysis here. Montana=s public policy, as defined in Article II, Section 16, precludes application of Michigan subrogation law to Musselman=s personal injury recovery until Musselman realizes the full measure of his adjudicated damages. As the parties agree that application of Montana law precludes subrogation by Federated in keeping with Montana=s Amade whole@ doctrine, we need not review the District Court=s application of Montana law.

## CONCLUSION

¶18    For the foregoing reasons, we affirm.

/S/ PATRICIA O. COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

9